IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF NEW MEXICO

CARNELL HUNNICUTT,

      Plaintiff,

vs.                                                                     No. CIV 18-0889 JB\JFR

FNU DESANTIAGO, MORIAMA
VALERIANO, D.L. RICHARDSON, FNU
GONZALES, D. MUNGIA, and GEO
GROUP, INC.,

      Defendants.

## MEMORANDUM OPINION AND ORDER

**THIS MATTER** comes before the Court on: (i) the Plaintiff's Amended Pro Se Civil Rights Complaint, filed October 9, 2018 (Doc. 9)("Amended Complaint"); (ii) the Defendants FNU DeSanitago, Moriama Valeriano, D.L. Richardson, and GEO Group, Inc.'s Motion to Dismiss and Memorandum of Law in Support, filed September 20, 2018 (Doc. 2)("Original MTD"); and (iii) the Defendants FNU DeSanitago, Moriama Valeriano, D.L. Richardson, and GEO Group, Inc.'s Motion to Dismiss Amended Complaint and Memorandum of Law in Support, filed October 18, 2018 (Doc. 10)("MTD").   Plaintiff Carnell Hunnicutt alleges prison supervisors retaliated against him after he filed grievances and he then engaged in an explosive argument with Correctional Officer FNU DeSantiago.   Having carefully reviewed the matter under 28 U.S.C. § 1915A and rule 12(b)(6) of the Federal Rules of Civil Procedure, the Court will grant the MTD and dismiss this case with prejudice.

## FACTUAL AND PROCEDURAL BACKGROUND

Hunnicutt originally filed this action on July 13, 2018, in New Mexico's Fifth Judicial District Court, Case No. D-506-CR-2018-1259.   See Complaint (Tort), filed July 13, 2018

(Doc. 1-1)("Original Complaint").  FNU DeSantiago, Moriama Valeriano, D.L. Richardson, and GEO Group, Inc. removed the action to federal court pursuant to 28 U.S.C. § 1331 on September 20, 2018, within the requisite thirty days of service.  See Notice of Removal ¶ 5, at 2, filed September 20, 2018 (Doc. 1)("Notice").  DeSantiago, Valeriano, Richardson, and GEO Group filed the Original MTD on the same date.  See Original MTD at 1.  On September 9, 2018, Hunnicutt filed the Amended Complaint.  See Amended Complaint at 1.  The Amended Complaint focuses on a conflict between Hunnicutt and DeSantiago, a correctional officer at the Lea County Correctional Facility.  For the limited purposes of this ruling, the Court assumes Hunnicutt's allegations are true.  See Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009).

The conflict appears to trace back to September 29, 2016, when Hunnicutt filed a grievance against DeSantiago.  See Amended Complaint ¶ 11, at 2.  DeSantiago allegedly treated Hunnicutt "as if [he] was special management status"; kept him "from appointments"; and "contain[ed] [him] in the unit."  Amended Complaint ¶ 11, at 2.  Hunnicutt then filed a grievance against Lea County Correctional Grievance Coordinator Valeriano for "circumventing [New Mexico Corrections Department] grievance policy to shield her co-workers['] abuse of authority."  Amended Complaint ¶ 12, at 2.  Hunnicutt also alleged Valeriano was not properly trained for her job.  See Amended Complaint ¶ 13, at 2.    Between January, 2017 and March, 2017, Hunnicutt filed two additional grievances against DeSantiago and one additional grievance against Valeriano.  See Amended Complaint ¶¶ 14-16, at 2.  He alleges DeSantiago is racist and "deliberate[ly] indifferen[t]," and that she stated in front of other inmates that Hunnicutt "isn't right in the head and files a lot of grievances."  Amended Complaint ¶¶ 14, 16, at 2.  Hunnicutt further alleges Valeriano violated grievance policies and/or did not resolve the dispute.  See Amended Complaint

¶ 15, at 2.

On April 8, 2017, Hunnicutt met with Lea County Correctional Sergeant Mungia and accused DeSantiago of "unprofessionalism and racist behavior."   Amended Complaint ¶ 17, at 2. Mungia promised to speak with DeSantiago, but Hunnicutt felt that a conversation would not resolve the problem.   See Amended Complaint ¶ 18, at 2.   Hunnicutt told Mungia, "check [your] staff or I will . . . . I will not tolerate Defendant DeSantiago continued [sic] disrespecting me and talking to me like crap."   Amended Complaint ¶¶ 18-19, at 2-3.   Hunnicutt then filed a grievance against Mungia, alleging that an earlier informal complaint "disappeared" from Hunnicutt's possession.   Amended Complaint ¶ 20, at 3.   Hunnicutt also alleges that Mungia ignored the Lea County Correctional handbook, which requires prison staff to report abuse.   See Amended Complaint ¶ 23, at 3.   It is not clear how those grievances were resolved, but Hunnicutt was not satisfied with the results.

On July 6, 2017, Hunnicutt and DeSantiago were both assigned work in housing pod 3-B. See Amended Complaint ¶¶ 24-25, at 3.   Hunnicutt was working on the paint and detail crew. See Amended Complaint ¶ 25, at 3.   At some point, DeSantiago told the unit to lock up for maintenance.   See Amended Complaint ¶ 25, at 3.   Hunnicutt stated that he was working with the maintenance crew and needed to finish his job, which the Warden assigned.   See Amended Complaint ¶ 25, at 3.   DeSantiago ignored him again and yelled "lock up."   See Amended Complaint ¶ 26, at 3.   Hunnicutt packed his tools in his work cart.   See Amended Complaint ¶ 27, at 3.   He refused, however, to leave his "Class A" tools unattended, per the Warden's instructions. See Amended Complaint ¶ 27, at 3.   DeSantiago again instructed Hunnicutt to "lock up or leave," as two maintenance technicians entered the unit.   Amended Complaint ¶ 28, at 4.   Hunnicutt told

DeSantiago to ask the maintenance technicians whether Hunnicutt was working with them on the maintenance crew, but DeSantiago just glared at Hunnicutt. See Amended Complaint ¶ 28, at 4. Hunnicutt finally agreed to leave and began pushing his cart towards the door. See Amended Complaint ¶ 29, at 4.

The Amended Complaint alleges that, as Hunnicutt was pushing the cart, Hunnicutt and DeSantiago engaged in the following exchange:[1]

DESANTIAGO:    "You think you're special -- that's why you got packed up in housing [pod] 4, because you couldn't make it."

HUNNICUTT:    "No one packed me up, and I doubt if anyone in New Mexico was man enough to pack me up."

DESANTIAGO:    "You think you're so smart, if you're so smart, why are you in prison?"

HUNNICUTT:    "[A] judge put me here, why is someone your age working a base job?"

Amended Complaint ¶¶ 30-33, at 4.

Hunnicutt and DeSantiago then entered housing pod D and continued the argument in the D-space area near Robert Pryor, Officer Jimenez, and Officer Gonzales. See Amended Complaint ¶ 34, at 4. DeSantiago called Hunnicutt a "piece of sh*t" and stated: "My people work harder than you, look at us Mexicans. We are strong." Amended Complaint ¶¶ 35-36, at 4. Hunnicutt laughed at DeSantiago, which made her angrier. See Amended Complaint ¶ 36, at 4. She continued:

---

[1]The Court quotes the full comments as set forth in the Amended Complaint, even though they contain shocking language. The argument is at the heart of Hunnicutt's claims, and paraphrasing would not accurately capture the exchange.

| DESANTIAGO: | "F**k you.   You need to take your blackass back to Africa." |
|---|---|
| HUNNICUTT: | "If it's true that you people are so strong, why do they sit in the unit (not working) and shoot suboxone all day and f**k each other?" |

Amended Complaint ¶ 36, at 4.   DeSantiago then called Hunnicutt's mother a "n**ger w*ore"

who "collects welfare[s]" and stated:

| DESANTIAGO: | "[Your father is a] black n**ger piece of sh*t making babies and abandoning them." |
|---|---|
| HUNNICUTT: | "Go back to Mexico with [your] racist attitude. [Are you] even a citizen of the United States?" |

Amended Complaint ¶¶ 39-40, at 5.

Until this point, none of the nearby Lea County Correctional officers intervened in the

verbal altercation.   See Amended Complaint ¶¶ 37-38, at 4-5.   DeSantiago then told a nearby

Hispanic inmate: "That n**ger is talking about our people (the Mexican race)."   Amended

Complaint ¶ 41, at 5.   The inmate removed his shirt, raised his fist, and made a comment like he

wanted to fight.   See Amended Complaint ¶ 42, at 5.   Hunnicutt said: "Bring it, because [you're]

going to lose."   Amended Complaint ¶ 42, at 5.   Hunnicutt's friend weighed in, telling

DeSantiago: "I don't know why you told that inmate that, he ain't going to do sh*t to Hunnicutt."

Amended Complaint ¶ 43, at 5.   Lea County Correctional Officer Gonzales finally stepped in and

called Sergeant Mungia.   See Amended Complaint ¶ 44, at 5.

When Mungia and Captain Phelps arrived, Hunnicutt reported DeSantiago's racial slurs.

See Amended Complaint ¶ 48, at 6.   Hunnicutt also admitted that he "gave [DeSantiago] back

what she was dishing out" and that "it felt good to finally give [her] some of her own medicine."

Amended Complaint ¶ 49, at 6.   Mungia placed Hunnicutt in administrative segregation for one

night and issued a misconduct report.   See Amended Complaint ¶¶ 50-52, at 6.   After interviewing several witnesses, Lea County Correctional officials found that the matter was informally resolved and dismissed the misconduct report.   See Amended Complaint ¶¶ 56-58, at 6-7.   When Hunnicutt returned from segregation the next day, however, he learned Mungia had reassigned his bed from housing pod 3.   See Amended Complaint ¶ 59, at 7.   Mungia placed him in housing pod 4, which is allegedly chaotic, full of excessive noise, gang-bangers, and young, intoxicated inmates.   See Amended Complaint ¶ 60, at 7.

Hunnicutt filed grievances and informal complaints stemming from the July 6, 2017, altercation.   See Amended Complaint ¶¶ 57-62, at 7.   Hunnicutt alleges, however, that Valeriano mishandled the grievance process, and that Lea County Correctional Major Richardson, Warden Smith, and prison director Franco failed to take corrective measures.   See Amended Complaint ¶¶ 62-67, at 7-8.   Specifically, Richardson and the other supervisors refused to fire DeSantiago, as Hunnicutt demanded.   See Amended Complaint ¶ 70, at 8.

Based on the foregoing, Hunnicutt argues that the Defendants: (i) rehoused him in retaliation for exercising his rights under the First Amendment to the Constitution of the United States of America; (ii) violated the equal protection clause; and (iii) violated prison grievance procedures and the Lea County Correctional handbook.   See Amended Complaint ¶¶ 74-78, at 9. Hunnicutt seeks at least $200,000.00 in damages from DeSantiago, Valeriano, Richardson, Gonzales, Mungia, and GEO Group.   See Amended Complaint ¶ B, at 10.   DeSantiago, Valeriano, Richardson, and GEO Group filed a Motion to Dismiss the Amended Complaint on October 18, 2018.   See MTD.   Hunnicutt filed a Response, see Plaintiff's Motion in Opposition to Motion to Dismiss and Memorandum of Law in Support, filed November 1, 2018

(Doc. 12)("Response"), and the matter is fully briefed.

## LAW REGARDING RULE 12(b)(6) AND PRISONER COMPLAINTS

Rule 12(b)(6) of the Federal Rules of Civil Procedure authorizes a court to dismiss a complaint for "failure to state a claim upon which relief can be granted[.]"  Fed. R. Civ. P. 12(b)(6).  "The nature of a Rule 12(b)(6) motion tests the sufficiency of the allegations within the four corners of the complaint after taking those allegations as true."  Mobley v. McCormick, 40 F.3d 337, 340 (10th Cir. 1994)(citing Williams v. Meese, 926 F.2d 994, 997 (10th Cir. 1991)).  The sufficiency of a complaint is a question of law, and when considering a rule 12(b)(6) motion, a court must accept as true all well-pleaded factual allegations in the complaint, view those allegations in the light most favorable to the non-moving party, and draw all reasonable inferences in the plaintiff's favor.  See Tellabs, Inc. v. Makor Issues & Rights, Ltd., 551 U.S. 308, 322-23 (2007)("[O]nly '[i]f a reasonable person could not draw . . . an inference [of plausibility] from the alleged facts' would the defendant prevail on a motion to dismiss." (quoting Makor Issues & Rights, Ltd. v. Tellabs, Inc, 437 F.3d 588, 602 (7th Cir. 2006)(second alteration in Tellabs, Inc. v. Makor Issues & Rights, Ltd.))); Smith v. United States, 561 F.3d 1090, 1098 (10th Cir. 2009)("[F]or purposes of resolving a Rule 12(b)(6) motion, we accept as true all well-pleaded factual allegations in a complaint and view these allegations in the light most favorable to the plaintiff." (citing Moore v. Guthrie, 438 F.3d 1036, 1039 (10th Cir. 2006))).

A complaint need not set forth detailed factual allegations, yet "[a] pleading that offers 'labels and conclusions' or a 'formulaic recitation of the elements of a cause of action'" is insufficient.  Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009)(quoting Bell Atl. Corp. v. Twombly, 550 U.S. 544, 555 (2007)).  "Threadbare recitals of the elements of a cause of action, supported

by mere conclusory statements, do not suffice."  Ashcroft v. Iqbal, 556 U.S. at 678.  "Factual allegations must be enough to raise a right to relief above the speculative level, on the assumption that all the allegations in the complaint are true (even if doubtful in fact)."  Bell Atl. Corp. v. Twombly, 550 U.S. at 555 (citations and footnote omitted).

To survive a motion to dismiss, a plaintiff's complaint must contain sufficient "facts that, if assumed to be true, state a claim to relief that is plausible on its face."  Mink v. Knox, 613 F.3d 995, 1000 (10th Cir. 2010)(citing Ashcroft v. Iqbal, 556 U.S. at 678).  "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged."  Ashcroft v. Iqbal, 556 U.S. at 678 (citing Bell Atl. Corp. v. Twombly, 550 U.S. at 556).  "Thus, the mere metaphysical possibility that some plaintiff could prove some set of facts in support of the pleaded claims is insufficient; the complainant must give the court reason to believe that this plaintiff has a reasonable likelihood of mustering factual support for these claims." Ridge at Red Hawk, L.L.C. v. Schneider, 493 F.3d 1174, 1177 (10th Cir. 2007)(emphasis omitted). The Tenth Circuit has stated:

> "[P]lausibility" in this context must refer to the scope of the allegations in a complaint: if they are so general that they encompass a wide swath of conduct, much of it innocent, then the plaintiffs "have not nudged their claims across the line from conceivable to plausible." The allegations must be enough that, if assumed to be true, the plaintiff plausibly (not just speculatively) has a claim for relief.

Robbins v. Okla., 519 F.3d 1242, 1247 (10th Cir. 2008)(McConnell, J.)(citation omitted)(quoting Bell Atl. Corp. v. Twombly, 550 U.S. at 570).

Where, as here, a prisoner civil rights action is removed from state court, the court also must perform a screening function under 28 U.S.C. § 1915A.  Under that section, the court has

discretion to dismiss a prisoner civil rights complaint sua sponte "if the complaint . . . is frivolous, malicious, or fails to state a claim on which relief may be granted." 28 U.S.C. § 1915A(b). In conducting the § 1915A review, the pleadings of the pro se prisoner "are to be construed liberally and held to a less stringent standard than formal pleadings drafted by lawyers." Hall v. Bellmon, 935 F.2d 1106, 1110 (10th Cir. 1991). If the court can "reasonably read the pleadings to state a valid claim on which the plaintiff could prevail, it should do so despite the plaintiff's failure to cite proper legal authority, . . . confusion of various legal theories, . . . poor syntax and sentence construction, or . . . unfamiliarity with pleading requirements." Hall v. Bellmon, 935 F.2d at 1110. At the same time, however, it is not "the proper function of the district court to assume the role of advocate for the *pro se* litigant." Hall v. Bellmon, 935 F.2d at 1110.

## LAW REGARDING 42 U.S.C. § 1983

Section 1983 of Title 42 of the United States Code provides:

> Every person who, under color of any statute, ordinance, regulation, custom, or usage, of any State . . . , subjects, or causes to be subjected, any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law, suit in equity, or other proper proceeding for redress . . . .

42 U.S.C. § 1983. Section 1983 creates only the right of action -- it does not create any substantive rights, which must come from the Constitution of the United States of America or from a federal statute. See Nelson v. Geringer, 295 F.3d 1082, 1097 (10th Cir. 2002)("[S]ection 1983 did not create any substantive rights, but merely enforces existing constitutional and federal statutory rights . . . ." (internal quotation marks, alteration, and citation omitted)). Section 1983 authorizes an injured person to assert a claim for relief against a person who, acting under color of

state law, violates the claimant's federally protected rights.   To state a claim upon which relief

can be granted under § 1983, a plaintiff must allege: (i) a deprivation of a federal right; and (ii) that

the person who deprived the plaintiff of that right acted under color of state law.   See West v.

Atkins, 487 U.S. 42, 48 (1988).   The Court has noted:

> [A] plaintiff must establish (1) a violation of rights protected by the federal
> Constitution or created by federal statute or regulation, (2) proximately caused (3)
> by the conduct of a "person" (4) who acted under color of any statute, ordinance,
> regulation, custom[,] or usage, of any State or Territory or the District of Columbia.

Schaefer v. Las Cruces Pub. Sch. Dist., 716 F. Supp. 2d 1052, 1063 (D.N.M. 2010)(Browning,

J.)(quoting Summum v. City of Ogden, 297 F.3d 995, 1000 (10th Cir. 2002)).

There is no respondeat superior liability for a constitutional deprivation under § 1983.   See

Ashcroft v. Iqbal, 556 U.S. at 675 ("Because vicarious liability is inapplicable to Bivens[2] and

§ 1983 suits, a plaintiff must plead that each Government-official defendant, through the official's

own individual actions, has violated the Constitution."); Bd. of Cty. Comm'rs v. Brown, 520 U.S.

397, 403 (1997).   Entities cannot be held liable solely on the basis of the existence of an employer-

employee relationship with an alleged tortfeasor.   See Monell v. Dep't of Soc. Servs. of N.Y., 436

U.S. 658, 689 (1978).   Supervisors can be held liable only for their own unconstitutional or illegal

policies, and not for their employees' tortious acts.   See Barney v. Pulsipher, 143 F.3d 1299, 1307-

08 (10th Cir. 1998).

---

[2]In Bivens v. Six Unknown Fed. Narcotics Agents, 403 U.S. 388 (1971), the Supreme
Court held that a violation of the Fourth Amendment to the Constitution of the United States "by
a federal agent acting under color of his authority gives rise to a cause of action for damages
consequent upon his unconstitutional conduct." 403 U.S. at 389.

The United States Court of Appeals for the Tenth Circuit states that supervisory liability under Section 1983 requires "an 'affirmative' link . . . between the unconstitutional acts by their subordinates and their 'adoption of any plan or policy. . . -- express or otherwise -- showing their authorization or approval of such misconduct.'" Dodds v. Richardson, 614 F.3d 1185, 1200-01 (10th Cir. 2010)(quoting Rizzo v. Goode, 423 U.S. 362, 371 (1976)). A specific case that the Tenth Circuit uses to illustrate this principle is Rizzo v. Goode, 423 U.S. 362 (1976), where the plaintiff sought to hold a mayor, a police commissioner, and other city officials liable under § 1983 for constitutional violations that unnamed individual police officers committed. See Dodds v. Richardson, 614 F.3d at 1200 (quoting Rizzo v. Goode, 423 U.S. at 371). The Tenth Circuit notes that the Supreme Court concluded, in Rizzo v. Goode, that there was a sufficient link between the police misconduct and the city officials' conduct, because there was a deliberate plan by some of the named defendants to "crush the nascent labor organizations." Dodds v. Richardson, 614 F.3d at 1200 (quoting Rizzo v. Goode, 423 U.S. at 371).

The Tenth Circuit also recognizes that Ashcroft v. Iqbal limited, but did not eliminate, supervisory liability for government officials based on an employee's or subordinate's constitutional violations. See Garcia v. Casuas, 2011 WL 7444745, at *25-26 (D.N.M. 2011)(Browning, J.)(citing Dodds v. Richardson, 614 F.3d at 1199). The Tenth Circuit in Dodds v. Richardson states:

> Whatever else can be said about *Iqbal*, and certainly much can be said, we conclude the following basis of § 1983 liability survived it and ultimately resolves this case: § 1983 allows a plaintiff to impose liability upon a defendant-supervisor who creates, promulgates, implements, or in some other way possesses responsibility for the continued operation of a policy the enforcement (by the defendant-supervisor or her subordinates) of which "subjects, or causes to be

subjected" that plaintiff "to the deprivation of any rights. . . secured by the Constitution . . . ."

Dodds v. Richardson, 614 F.3d at 1199.   The Tenth Circuit has noted, however, that "*Iqbal* may very well have abrogated § 1983 supervisory liability as we previously understood it in this circuit in ways we do not need to address to resolve this case."   Dodds v. Richardson, 614 F.3d at 1200. It concludes that Ashcroft v. Iqbal did not alter "the Supreme Court's previously enunciated § 1983 causation and personal involvement analysis."   Dodds v. Richardson, 614 F.3d at 1200.   The Tenth Circuit used this conclusion as the basis of its test for supervisory liability under Section 1983:

> A plaintiff may [ ] succeed in a § 1983 suit against a defendant-supervisor by demonstrating: (1) the defendant promulgated, created, implemented or possessed responsibility for the continued operation of a policy that (2) caused the complained of constitutional harm, and (3) acted with the state of mind required to establish the alleged constitutional deprivation.

Dodds v. Richardson, 614 F.3d at 1199-1200.

The Tenth Circuit recognizes that non-supervisory defendants may be liable if they knew or reasonably should have known that their conduct would lead to the deprivation of a plaintiff's constitutional rights by others, and an unforeseeable intervening act has not terminated their liability.   See Martinez v. Carson, 697 F.3d 1252, 1255 (10th Cir. 2012)(quoting 42 U.S.C. § 1983; Trask v. Franco, 446 F.3d 1036, 1046 (10th Cir. 2006)).

## LAW REGARDING PRISONER RETALIATION CLAIMS

The First Amendment provides that "Congress shall make no law . . . prohibiting . . . the right of the people peaceably to assemble, and to petition the Government for a redress of grievances."   U.S. Const. amend. I.   Prisoners retain their First Amendment rights to free speech

and to petition the government for a redress of grievances.    See Wildberger v. Bracknell, 869 F.2d

1467, 1468 (11th Cir. 1989).    A prisoner's incarceration, however, legitimately limits his or her

rights.    See Pell v. Procunier, 417 U.S. 817, 822 (1974)("[A] prison inmate retains those First

Amendment rights that are not inconsistent with his status as a prisoner or with the legitimate

penological objectives of the corrections system.").

Prison officials may not retaliate against or harass inmates because of the inmate's exercise

of his or her constitutional rights, including filing internal prison grievances or exercising First

Amendment rights to free speech.    See Fogle v. Pierson, 435 F.3d 1252, 1264 (10th Cir. 2006);

Smith v. Maschner, 899 F.2d 940, 947-48 (10th Cir. 1990); Farrow v. West, 320 F.3d 1235, 1248

(11th Cir. 2003)("The First Amendment forbids prison officials from retaliating against prisoners

for exercising the right of free speech.").    The general elements of a retaliation claim are: (i) the

plaintiff engaged in constitutionally protected activity; (ii) the defendant responded by causing an

injury that "would chill a person of ordinary firmness from continuing to engage in that activity";

and (iii) the plaintiff's activity substantially motivated the defendant's response.    Gee v. Pacheco,

627 F.3d 1178, 1182, 1195 (10th Cir. 2010)(internal quotation marks and citations omitted).    In

the prison context, "a plaintiff must prove that but for the retaliatory motive, the incidents to which

he refers, including the disciplinary action, would not have taken place."    Peterson v. Shanks, 149

F.3d 1140, 1144 (10th Cir. 1998)(quotations omitted).

## LAW REGARDING EQUAL PROTECTION CLAIMS

The Equal Protection Clause of the Fourteenth Amendment guarantees that "[n]o State

shall . . . deny to any person within its jurisdiction the equal protection of the laws."    U.S. Const.

amend. XIV, § 1.    "The Equal Protection Clause 'keeps governmental decision makers from

- 13 -

treating differently persons who are in all relevant respects alike.'" <u>Soskin v. Reinertson</u>, 353 F.3d 1242, 1247 (10th Cir. 2004)(quoting <u>Nordlinger v. Hahn</u>, 505 U.S. 1, 10 (1992)). "The Clause 'creates no substantive rights. Instead, it embodies a general rule that States must treat like cases alike but may treat unlike cases accordingly.'" <u>Teigen v. Renfrow</u>, 511 F.3d 1072, 1083 (10th Cir. 2007)(unpublished)(quoting <u>Vacco v. Quill</u>, 521 U.S. 793, 799 (1997)).

Generally, to state a claim under § 1983 for violation of the Equal Protection Clause, a plaintiff must show that he or she is a member of a class of individuals that is being treated differently from similarly situated individuals who are not in that class. <u>See</u> <u>SECSYS, LLC v. Vigil</u>, 666 F.3d 678, 688 (10th Cir. 2012). The plaintiff must demonstrate that the "'decisionmaker . . . selected or reaffirmed a particular course of action at least in part because of, not merely in spite of' the law's differential treatment of a particular class of persons." <u>SECSYS, LLC v. Vigil</u>, 666 F.3d at 685 (quoting <u>Pers. Adm'r of Mass. v. Feeney</u>, 442 U.S. 256, 279 (1979)). In other words, "a discriminatory effect against a group or class may flow from state action, it may even be a foreseen (or known) consequence of state action, but it does not run afoul of the Constitution unless it is an intended consequence of state action." <u>SECSYS, LLC v. Vigil</u>, 666 F.3d at 685.

A state actor can generally be subject to liability only for its own conduct under 42 U.S.C. § 1983. <u>See</u> <u>Robbins v. Okla.</u>, 519 F.3d at 1251 (citing <u>DeShaney v. Winnebago Cty. Dep't of Soc. Servs.</u>, 489 U.S. 189, 197 (1989)). At least in the Tenth Circuit, however, under some circumstances, harassment by a third-party can subject a supervisor or municipality to liability for violation of the equal-protection clause -- not for the harasser's conduct, per se, but for failure to take adequate steps to stop it. <u>See</u> <u>Murrell v. Sch. Dist. No. 1</u>, 186 F.3d 1238, 1249–51 (10th Cir.

1999). The plaintiff "must demonstrate that a state employee's discriminatory actions are representative of an official policy or custom of the municipal institution, or are taken by an official with final policy making authority." Murrell v. Sch. Dist. No. 1, 186 F.3d at 1249 (citations omitted). The failure to prevent discrimination before it occurs is not actionable. Murrell v. Sch. Dist. No. 1, 186 F.3d at 1250 n.7.

## ANALYSIS

Hunnicutt's primary claim is that DeSantiago subjected him to racist comments, and that prison officials retaliated against him for complaining and/or "giving her some of her own medicine." Amended Complaint ¶ 49, at 6. He also appears to raise equal protection claims based on his altercation with DeSantiago and constitutional claims based on the alleged mishandling of the grievance process. The Defendants seek to dismiss the Amended Complaint under rule 12(b)(6). As an initial matter, the Court determines that DeSantiago, Valeriano, Richardson, and GEO Group's Original MTD is moot. An amended complaint supersedes the original complaint and renders the original complaint of no legal effect. See Miller v. Glanz, 948 F.2d 1562, 1565 (10th Cir. 1991); Gilles v. United States, 906 F.2d 1386, 1389 (10th Cir. 1990). The Court therefore will deny the Original MTD, and focus on the Amended Complaint and the MTD.

## I. THE COURT DISMISSES HUNNICUTT'S FIRST AMENDMENT RETALIATION CLAIMS.

Hunnicutt appears to argue that DeSantiago and/or other Lea County Correctional officials retaliated for the grievances filed before the July, 2017, altercation. He also argues Lea County Correctional officials transferred him to an undesirable housing unit in retaliation for exercising

his free speech rights during the altercation. These claims fail, because Hunnicutt has not demonstrated "that but for the retaliatory motive, the incidents to which he refers, including the [adverse] action, would not have taken place." Peterson v. Shanks, 149 F.3d 1140, 1144 (10th Cir. 1998)(quotations omitted). See also McBeth v. Himes, 598 F.3d 708, 719 (10th Cir. 2010)("If there is a finding that retaliation was not the but-for cause of the adverse action, the claim fails for lack of causal connection . . . despite proof of some retaliatory animus in the official's mind.")(alterations and quotation marks removed). The Amended Complaint paints a detailed picture of Hunnicutt's interactions with DeSantiago. Though DeSantiago may have disliked Hunnicutt, there is no indication that the grievances he filed against her in late 2016 and early 2017 were the "but for" cause of any adverse action by prison officials. E.g., Friedman v. Kennard, 248 F. App'x 918, 922 (10th Cir. 2007)(unpublished)("Standing alone and without supporting factual allegations, temporal proximity between an alleged exercise of one's right of access to the courts and some form of jailhouse discipline does not constitute sufficient circumstantial proof of retaliatory motive to state a claim."). Rather, the allegations reflect that DeSantiago made offensive comments in passing in early 2017; lobbed the first insult in July, 2017, after Hunnicutt repeatedly defied her command to shut down a unit for maintenance; and that the parties continued to escalate their angry banter until it became toxic and explosive.

To the extent Hunnicutt challenges any adverse actions after the altercation, the claim still fails. Hunnicutt spent a single night in administrative segregation and was transferred to a less desirable housing unit after refusing to comply with three commands from a correctional officer, insulting her age and her Hispanic heritage, and describing her job as "base." Amended Complaint ¶¶ 30-33, at 4. It appears that he was allowed to remain on the maintenance crew, and

the misconduct report was dismissed, because of the racist and abusive comments which DeSantiago made in return. Nevertheless, it cannot be said that any discipline stemmed from the Hunnicutt's exercise of free speech. Hunnicutt's First Amendment retaliation claims therefore fail.

## II.    THE COURT DISMISSES HUNNICUTT'S EQUAL PROTECTION CLAIMS.

Hunnicutt next argues that DeSantiago violated the Equal Protection Clause, and that her supervisors failed to intervene or terminate her employment. Hunnicutt alleges that DeSantiago made racist remarks before and during the altercation, and that she tried to instigate a racial confrontation between Hunnicutt, who is African-American, and a Hispanic inmate.

A successful equal protection claim must demonstrate that the plaintiff is being treated differently from similarly situated individuals who are not a member of their class. See SECSYS, LLC v. Vigil, 666 F.3d at 688. The mistreatment here takes the form of DeSantiago's racist comments; Hunnicutt has not described how he was otherwise treated differently than non-African-American inmates. "[V]erbal harassment or abuse . . . is not sufficient to state a constitutional deprivation under 42 U.S.C. § 1983." Collins v. Cundy, 603 F.2d 825, 827 (10th Cir. 1979)(citations omitted). While a prison guard's use of racist remarks is "deplorable and unprofessional," "[i]t does not . . . constitute" an Equal Protection violation. Williams v. Levansailor, 153 F.3d 730 (10th Cir. 1998)(collecting cases). Moreover, to the extent Hunnicutt alleges DeSantiago attempted to incite a racial fight between two inmates, the Amended Complaint makes it clear that Hunnicutt was not harmed. See Perkins v. Kan. Dep't of Corrections, 165 F.3d 803, 807 (10th Cir. 1999)("[A]lthough "mental and emotional distress can constitute a compensable injury in suits for damages under 42 U.S.C. § 1983 based upon violations of

constitutional rights," "such a suit cannot stand unless the plaintiff has suffered a physical injury in addition to mental or emotional harms.")(quotations omitted).   Because there is no other evidence of racial discrimination beyond racist remarks from one correctional officer, Hunnicutt does not state a claim under the Equal Protection Clause.

## III.   THE COURT DISMISSES HUNNICUTT'S GRIEVANCE PROCESS CLAIMS.

Section I, above, addressed and rejected Hunnicutt's claims that Lea County Correctional officials retaliated as a result of his grievances.   This section addresses any stand-alone claim that Lea County Correctional officials mishandled the grievance process.   Hunnicutt appears to allege that Valeriano, Richardson, and other Lea County Correctional officials mishandled his various grievances and refused to terminate DeSantiago.   The Tenth Circuit has repeatedly held that "there is no independent constitutional right to state administrative grievance procedures."   Boyd v. Werholtz, 443 F. App'x 331, 332 (10th Cir. 2011)(collecting cases)(unpublished).   See also Von Hallcy v. Clements, 519 F. App'x 521, 524 (10th Cir. 2013)(rejecting prisoner's claim that prison director violated due process by providing him with an inadequate prisoner grievance reporting system)(unpublished); Merryfield v. Jordan, 431 F. App'x 743, 749-50 (10th Cir. 2011)(same)(unpublished); Ciempa v. Ward, 150 F. App'x 905, 906-07, 909 (10th Cir. 2005)(same)(unpublished).   "[W]hen the claim underlying the administrative grievance involves a constitutional right, the prisoner's right to petition the government for redress is the right of access to the courts, which is not compromised by the prison's refusal to entertain his grievance."   Boyd v. Werholtz, 443 F. App'x at 332 (quoting Flick v. Alba, 932 F.2d 728, 729 (8th Cir. 1991)). Hunnicutt's claims that Lea County Correctional officials mishandled the grievance process therefore fail.

## IV.    **THE COURT DISMISSES HUNNICUTT'S MISCELLANEOUS CLAIMS.**

In the Request for Relief, the Amended Complaint includes labels such as "deliberate indifference in violation of the Eighth Amendment," negligence, and breach of contract based on the Defendants' failure to adhere to Lea County Correctional policies.   These claims fail, for two reasons.   First, labels, conclusions and a formulaic recitation of the elements of a cause of action are not sufficient to state a claim for relief.   See Bell Atl. Corp. v. Twombly, 550 U.S. at 555. Further, even if the Court considered the claims, Hunnicutt has not demonstrated that the labels are relevant to this cause of action.   Prison officials can be liable under the Eighth Amendment for "deliberate indifference to a substantial risk of serious harm to an inmate."   Farmer v. Brennan, 511 U.S. 825, 828 (1994).   There is no indication here, however, that DeSantiago's racist remarks posed a substantial risk of harm to Hunnicutt.   In fact, the Amended Complaint reflects that, to Hunnicutt, "it felt good to finally give [her] some of her own medicine."   Amended Complaint ¶ 49, at 6.   Further, Hunnicutt's negligence claim is facially deficient.   For the reasons noted above, Hunnicutt did not suffer any damages or harm, and if he did, the Defendants were not the proximate cause.   See Nowell v. Medtronic Inc., 372 F. Supp. 3d 1166, 1225 (D.N.M. 2019)(Browning, J.)("[A] negligence claim requires the existence of a duty from a defendant to a plaintiff, breach of that duty, which is typically based on a standard of reasonable care, and the breach being a cause-in-fact and proximate cause of the plaintiff's damages.").   Finally, Hunnicutt's claim that the Lea County Correctional handbook constituted a contract between himself and prison officials is without merit.   Any miscellaneous claims raised by Hunnicutt therefore fail.

## V. THE COURT WILL DENY A LEAVE TO AMEND AND WILL NOT ASSESS A STRIKE.

Although Hunnicutt responded to the MTD, he does not seek leave to file a Third Amended Complaint. <u>See</u> <u>generally</u> Response. He filed the Amended Complaint after the Defendants filed the Original MTD in an apparent attempt to cure any filing deficiencies the Defendants noted. For these reasons, and because the Amended Complaint contains a clear, detailed account of Hunnicutt's claims, the Court declines to request sua sponte a Third Amended Complaint. <u>See</u> <u>Hall v. Bellmon</u>, 935 F.2d at 1109-10 (stating that a leave to amend need not be granted when the amended complaints would also be subject to immediate dismissal under rule 12(b)(6) or under § 1915A); <u>Reynoldson v. Shillinger</u>, 907 F.2d 124, 126 (10th Cir. 1990)(stating that a leave to amend is given in situations "where deficiencies in a complaint are attributable to oversights likely the result of an untutored pro se litigant's ignorance of special pleading requirements . . ."). The Court will grant the MTD and dismiss the Amended Complaint with prejudice for failure to state a claim upon which relief can be granted.

The Defendants also ask the Court to assess a "strike" under 28 U.S.C. § 1915(g). That statute provides that an incarcerated plaintiff proceeding in forma pauperis accrues a "strike" each time they bring a complaint that is frivolous, malicious, or that fails to state a claim upon which relief may be granted. <u>See</u> 28 U.S.C. § 1915(g); <u>Hafed v. Bureau of Prisons</u>, 635 F.3d 1172, 1176-77 (10th Cir. 2011)(holding that dismissal of an action as frivolous, malicious, or for failure to state a claim under § 1915(e)(2)(B) counts as a strike under § 1915(g)). Hunnicutt is not proceeding, however, in forma pauperis. The Defendants paid the filing fee when they removed the action to federal court. Accordingly, § 1915(g) is not applicable, and the Court declines to

assess a strike.  See <u>Woodson v. McCollum</u>, 875 F.3d 1304 (10th Cir. 2017)(reversing district court for applying the three-strikes rule to a removed case).

**IT IS ORDERED** that: (i) the Plaintiff's Amended Pro Se Civil Rights Complaint, filed October 9, 2018 (Doc. 9), is dismissed with prejudice; (ii) the Defendants FNU DeSanitago, Moriama Valeriano, D.L. Richardson, and GEO Group, Inc.'s Motion to Dismiss and Memorandum of Law in Support, filed September 20, 2018 (Doc. 2), is denied as moot; and (iii) the Defendants FNU DeSanitago, Moriama Valeriano, D.L. Richardson, and GEO Group, Inc.'s Motion to Dismiss Amended Complaint and Memorandum of Law in Support, filed October 18, 2018 (Doc. 10), is granted; and (iv) a separate Final Judgment will be entered disposing of this case.

_____
UNITED STATES DISTRICT JUDGE

*Parties and counsel:*

Carnell Hunnicutt
Southern NM Correctional Facility
Las Cruces, New Mexico

　　　*Plaintiff pro se*


April D. White
YLAW, P.C.
Albuquerque, New Mexico

　　　*Attorneys for the Defendants*